UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DRIVEWAY MAINTENANCE, INC.,
a Florida corporation,

    Plaintiff,

v.                              Case No. 8:13-cv-1751-T-33TGW

DDR SOUTHEAST CLEARWATER
DEVELOPMENT, LLC, a Delaware
limited liability company,
and the unknown assigns,
successors in interest, trustees,
or any other party claiming by,
through, under, or against the
foregoing,

    Defendant.
_____/

DDR SOUTHEAST CLEARWATER
DEVELOPMENT, LLC, a Delaware
limited liability company,

    Third-Party Plaintiff,

v.

CONTROL BUILDING SERVICES,
INC., CONTROL EQUITY GROUP,
INC., EDWARD TUREN and NEAL
TUREN,

    Third-Party Defendants.
_____/

**<u>ORDER</u>**

    This matter comes before the Court pursuant to

Plaintiff Driveway Maintenance, Inc.'s Motion to Remand and

Alternative Motion to Sever and Remand (Doc. # 10); Third-Party Defendant Edward Turen's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. # 24); Motion to Sever by Third-Party Defendants Control Building Services, Inc., Control Equity Group, Inc., and Edward Turen (Doc. # 30); Motion to Transfer Third-Party Action to the District of New Jersey by Third-Party Defendants Control Building Services, Inc., Control Equity Group, Inc., and Edward Turen (Doc. # 31); Defendant DDR Southeast Clearwater Development LLC's Motion to Remand (Doc. # 33); and Third-Party Defendant Neal Turen's Motion to Dismiss Third-Party Complaint, Motion to Sever and Transfer, or Motion to Stay (Doc. # 36). All of the abovementioned Motions are ripe for review.

Upon due consideration and for the reasons that follow, this Court grants Driveway Maintenance Inc.'s Motion to Remand (Doc. # 10) and DDR Southeast Clearwater Development LLC's Motion to Remand (Doc. # 33) and remands this case to the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida.

## I.  **Background**

In August of 2012, Plaintiff Driveway Maintenance, Inc. ("Driveway") and Defendant DDR Southeast Clearwater

2

Development, LLC ("DDR") entered into a contractual relationship in which Driveway was to perform labor for DDR. (Doc. # 2 at ¶¶ 8, 15). Upon performing its obligations under the agreement, Driveway rendered an invoice to DDR for $19,692.00. (Id. at ¶ 10). DDR allegedly failed to pay the full amount due under the agreement. (Id. at ¶¶ 11, 17). On April 2, 2013, Driveway filed a Complaint in state court against DDR. (Doc. # 2). The Complaint set forth three counts: Breach of Contract (Count I), Breach of Contract (Count II), and Implied Contract (Count III), and sought $19,692.00 in damages. (Id.).

On May 28, 2013, DDR filed a Third-Party Complaint against Control Building Services, Inc. ("CBS"); Control Equity Group, Inc. ("CEG"); Edward Turen; and Neal Turen. (Doc. # 3). In the Third-Party Complaint, DDR contends that pursuant to a services agreement entered into between DDR and Oxford Building Services, Inc. ("Oxford"), "Oxford coordinated the contracting, oversight, and payment of vendors to perform facility maintenance work at DDR properties." (Id. at ¶ 2). The services agreement contained a guaranty agreement wherein CBS, as guarantor, unconditionally guaranteed that Oxford shall perform the provisions of the services agreement. (Id. at ¶¶ 22-23).

In the Third-Party Complaint, DDR contends that "under the agreement, Oxford acted as a conduit through which DDR would pay for the vendor services, by vendors invoicing Oxford and Oxford, in turn, invoicing DDR for the underlying [s]ervice [p]rovider [i]nvoices." (Id.). Furthermore,

> At some point during the course of this arrangement and unknown to DDR, CEG and its affiliates . . ., at the direction of the Turens, took out a revolving credit facility, the collateral for which consisted of bank accounts such as the one into which DDR funded Oxford to pay vendors. The revolving facility was repaid by a daily sweeping of all cash from the [affiliates'] bank accounts, including the funds obtained from DDR pursuant to the [s]ervices [a]greement for the sole purpose of paying [s]ervice [p]rovider [i]nvoices.

(Id. at ¶ 3).

Eventually the alleged "scheme" collapsed. (Id. at ¶ 4). "The result was approximately $11.1 million in invoices that were paid by DDR to Oxford but for which the underlying [s]ervice [p]rovider [i]nvoices went unpaid." (Id.). Disgruntled vendors sought recourse from DDR directly. (Id.).

Upon being notified of the alleged "scheme," DDR sent auditors to Oxford to attempt to verify the activity. (Id.

at ¶ 35). On or about January 28, 2013, DDR determined Oxford was insolvent. (Id. at ¶ 36). Oxford declared bankruptcy in an action filed February 26, 2013, in the United States Bankruptcy Court for the District of New Jersey. (Id. at ¶ 39).

The Third-Party Complaint contains six counts: Breach of Guaranty Agreement against CBS (Count I); Tortious Interference with Contract against all Defendants (Count II); Conversion against CEG, Edward Turen, and Neal Turen (Count III); Fraud against CEG, Edward Turen, and Neal Turen (Count IV); Civil Conspiracy against all Defendants (Count V); and Indemnity against all Defendants (Count VI). (Doc. # 3).

On July 5, 2013, CBS, CEG, and Edward Turen filed a Notice of Removal.[1] (Doc. # 1). In the Notice, the removing Third-Party Defendants sought removal under 28 U.S.C. §§ 1452(a) and 1334(b) "because the [third-party action] is related to the Chapter 11 proceedings of Oxford. . . pending in the United States Bankruptcy Court for the District of New Jersey." (Id. at ¶ 4). In support of their contention, the removing Third-Party Defendants claimed the

---

[1]    The Court notes that Third-Party Defendant Neal Turen did not join CBS, CEG, and Edward Turen in filing the Notice of Removal. (See Doc. # 1).

state action "has the very real potential to impact the
Oxford bankruptcy" because successful claims by DDR against
the Third-Party Defendants would give rise to claims of
indemnity or contribution by the removing Third-Party
Defendants against Oxford, the original obligor, and the
Oxford-related debtors. (Id. at ¶ 8).

## A.   Driveway's Motion to Remand and Alternative Motion to Sever and Remand

On July 11, 2013, Driveway filed a Motion to Remand
and Alternative Motion to Sever and Remand. (Doc. # 10).
In its motion, Driveway argues that the case does not
involve removable claims or causes of action — the
third-party claims have no separate and independent basis
for federal jurisdiction. (Id. at 6-7). Furthermore,
Driveway claims "the parties, the witnesses, and the actual
work at issue are all located in Pinellas County, Florida,
such that removal (and transfer to New Jersey) would be
highly inconvenient." (Id. at 10). Alternatively, Driveway
requests that this Court sever the Third-Party Complaint
and remand the claims by Driveway against DDR to state
court because the claims DDR asserts against the Third-
Party Defendants are "all independent claims that can be
separately asserted regardless of the forum." (Id.).

In response, CBS, CEG, and Edward Turen argue that remanding the case is improper because the third-party action is related to the Oxford bankruptcy within the meaning of 28 U.S.C. § 1334(b). (Doc. # 27 at 2). In support of their contention, they argue that any recovery by DDR against CBS, CEG, and Edward Turen, would "ripen" the claims of subrogation, indemnity or contribution that CBS, CEG, or Edward Turen will have against Oxford. (Id. at 7). "Thus, Oxford will be subject to additional claims from non-debtor third parties as a result of the outcome of this dispute thereby affecting Oxford's estate both in terms of value and administration." (Id.).

Alternatively, CBS, CEG, and Edward Turen state the Court should sever DDR's Third-Party Complaint from the original Complaint and transfer the matter to the United States District Court for the District of New Jersey. (Id. at 9). CBS, CEG, and Edward Turen have separately filed a Motion to Sever (Doc. # 30) and Motion to Transfer (Doc. # 31). The arguments presented in those Motions will be addressed herein.

**B.** **Edward Turen's Motion to Dismiss for Lack of Personal Jurisdiction**

On July 24, 2013, Third-Party Defendant Edward Turen filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. # 24). In his Motion, he states, "While the Third Party Complaint centers upon the alleged conduct of non-party Oxford Building Services, Inc., it is devoid of allegations that Mr. Turen, a citizen of New Jersey with insufficient ties to the state of Florida, personally conducted any activity in Florida or caused harm to DDR in Florida through activities specifically directed towards this state." (Id. at 2).

Furthermore, Edward Turen claims he is immune from jurisdictional allegations pursuant to Florida's "corporate shield doctrine," wherein "extra-jurisdictional acts performed by an employee in his corporate capacity may not form the basis for the exercise of personal jurisdiction over the employee in the forum state." (Id. at 8). Edward Turen acknowledges the fraud exception to the corporate shield doctrine, but explains why it does not apply in this case: "because all of the acts of fraud or intentional misconduct specifically attributable to Mr. Turen are alleged to have been performed in his corporate capacity as an employee of either CBS, CEG or Oxford outside of Florida and only in relation to [DDR]." (Id. at 9). Finally, Edward

8

Turen argues that DDR is bound by the forum selection clause contained in the service agreement, which requires all claims arising therefrom to be brought in Ohio. (Id. at 13; see Doc. # 3-1).

In response, DDR states the Florida Long Arm Statute is satisfied because the alleged civil conspiracy included tortious conduct "aimed at the State of Florida." (Doc. # 34 at 4). Furthermore, DDR argues the corporate shield doctrine does not preclude Florida from having personal jurisdiction over Edward Turen in Florida because the alleged misconduct was performed for the personal benefit of Edward Turen. (Id. at 5-6). Ultimately, DDR states jurisdiction in Florida is proper because Edward Turen committed or conspired to commit tortious conduct directed at Florida, such conduct has caused significant injury in Florida, and such injury in Florida was both foreseeable and deliberate. (Id. at 7).

### C.  CBS, CEG, and Edward Turen's Motion to Sever

On July 31, 2013, CBS, CEG, and Edward Turen filed a Motion to Sever.[2] (Doc. # 30). In their Motion, CBS, CEG,

---

[2]    CBS, CEG, and Edward Turen filed the same document as (1) Opposition to Plaintiff's Motion to Remand; (2) CBS, CEG, and Edward Turen's Motion to Sever; and (3) CBS, CEG,

and Edward Turen request that this Court sever the third-party action from the first-party action of Driveway and DDR and remand the first-party action to state court. (<u>Id.</u> at 9). This "will allow [Driveway's] claim, which has almost no factual overlap with the third-party action, to proceed expeditiously in state court while permitting transfer of the third-party action to the District of New Jersey where it may be referred to the Oxford [b]ankruptcy." (<u>Id.</u>).

CBS, CEG, and Edward Turen further argue that severance would promote judicial efficiency and economy because the Third-Party Complaint is intertwined with the Oxford bankruptcy and overlaps with DDR's proofs of claims filed therein. (<u>Id.</u> at 10). Thus, it would be "more efficient for the Third-Party Complaint to be decided by the same court deciding the allowability of [DDR's] proof of claim and any proposed [p]lan of reorganization both from an economy standpoint and for the purposes of avoiding inconsistent results." (<u>Id.</u>). Moreover, CBS, CEG, and Edward Turen argue severance is appropriate because "[t]he Oxford [b]ankruptcy is already underway in New Jersey, and

---

and Edward Turen's Motion to Transfer the Third-Party Action to the District of New Jersey. (<u>See</u> Doc. ## 27, 30, 31).

the bankruptcy court will be familiar with many of the underlying facts and circumstances." (Id.). Finally, Third-Party Defendants' representatives, witnesses, and records related to this matter are located in New Jersey, as are some third-party witnesses. (Id.).

In response, Driveway agrees that its claims against DDR must be severed and remanded to state court. (Doc. # 32 at 2). However, DDR asserts that severance is inappropriate because the defenses raised in the underlying action are inextricably intertwined with the claims of DDR against the Third-Party Defendants. (Doc. # 38 at 13). In addition, even if it could be severed, DDR contends that roughly the same level of judicial labor would be required to flush out the Third-Party Defendants' role as it relates to the indemnity claim and the associated affirmative defenses. (Id. at 14). Furthermore, severance might cause a delay in the ability to prosecute and defend against the first-party action and may create the prospect of inconsistent results. (Id.).

### D.   **CBS, CEG, and Edward Turen's Motion to Transfer Third-Party Action to District of New Jersey**

On July 31, 2013, CBS, CEG, and Edward Turen filed a Motion to Transfer. (Doc. # 31). In support of their

11

request, CBS, CEG, and Edward Turen claim transfer would promote economical and efficient administration of the Oxford bankruptcy estate because the Third-Party Complaint is directly related to DDR's claim in the Oxford case. (Id. at 12). Furthermore, transfer would promote judicial efficiency given that the events surrounding the Oxford bankruptcy case are intertwined with the Third-Party Complaint allegations. (Id. at 13). In addition, CBS, CEG, and Edward Turen assert transfer would be convenient for the parties because the Third-Party Defendants, their documents and records, and key witnesses are all located in New Jersey. (Id. at 15).

In response, Driveway asserts that it has no objection to the Motion to Transfer to the extent the Third-Party Defendants seek transfer of only the third-party claims. (Doc. # 32 at 2). DDR responds that transfer is not warranted because the primary witnesses, the parties, and the actual work at issue are all located in Pinellas County, Florida; thus, making New Jersey a highly inconvenient forum. (Id. at 6). In addition, DDR claims that transfer would not be in the interest of justice because transfer would have little or no impact on the economic and efficient administration of the Oxford estate

- the third-party action is a "non-core matter" and not closely tied to the administration of the Oxford estate. (Id. at 8).

### E.   DDR's Motion to Remand

On August 5, 2013, DDR filed a Motion to Remand. (Doc. # 33). DDR contends that remand is appropriate because the third-party action is a non-core matter and it is not closely related to the administration of the Oxford estate. (Id. at 6-7). As such, it will have little if any impact on the administration of Oxford's estate. (Id. at 7). DDR claims the "issue that could potentially relate to bankruptcy is . . . 'a speculative and unfiled claim' for indemnification that could be asserted" by the Third-Party Defendants against Oxford, and is thus not "related to" the Oxford bankruptcy case. (Id.). Therefore, this Court lacks jurisdiction to entertain removal and transfer of the case. (Id.).

In the response, CBS, CEG, and Edward Turen direct this Court to review the arguments contained in their (1) Motion in Support of Removal Jurisdiction, Severance, and Transfer to the District of New Jersey (Doc. # 25); (2) Motion to Sever (Doc. # 30); and (3) Motion to Transfer (Doc. # 31).

**F.   Motion to Dismiss Third-Party Complaint; Motion to Sever and Transfer; Motion to Stay by Neal Turen**

On August 9, 2013, Third-Party Defendant Neal Turen filed a Motion to Dismiss Third-party Complaint; Motion to Sever and Transfer; or Motion to Stay. (Doc. # 36).

Regarding the Motion to Dismiss, Neal Turen states the Third-Party Complaint is devoid of any allegation that he (1) purposefully acted towards Florida; (2) has any connection in Florida, nor any substantial connection, arising from his personal actions; or (3) should have foreseen being haled into Court in Florida by virtue of being an officer of a corporate entity that had a contract with a non-party in another state. (Id. at 12).

In the alternative, Neal Turen requests that this Court sever the third-party action and transfer it to the "New Jersey Bankruptcy Court or the Ohio District Court" because the same issues presented in the Third-Party action are currently being litigated in those jurisdictions. (Id. at 17). Furthermore, Neal Turen seeks transfer because "all of the parties are foreign entities. All of the Third-Party Defendants are citizens of New Jersey: the two individuals live in New Jersey and the two entities have their

14

principal place of business in New Jersey. [DDR] has alleged that it is a Delaware limited liability company 'with its principal place of business in Florida,' but its records on file with Florida's Secretary of State indicate its 'principal address' is in Ohio." (Id. at 18). In addition, the relevant witnesses and documents are with the related claims in either New Jersey or Ohio. (Id. at 19).

Finally, if nothing else, Neal Turen requests that this Court stay the third-party action "under the abstention doctrine" to avoid duplication of judicial labor and the possibility of inconsistent results that may occur from multiple adjudications of these claims in multiple forums. (Id. at 21).

In response, DDR argues that Florida does have jurisdiction over Neal Turen because Neal Turen committed or conspired to commit tortious conduct directed at Florida, such conduct has caused significant injury in Florida, and such injury in Florida was both foreseeable and deliberate. (Doc. # 39 at 7).

## II.  Discussion

The primary issue before the Court is whether removal by Third-Party Defendants – CBS, CEG, and Ed Turen – was appropriate in the first instance. "The right of a third-

party defendant to remove a case from State court has been a source of tremendous conflict among the different courts that have considered the question. The vast majority of courts that have considered whether third-party defendants have the right to remove a case have determined that no such right exists." Hernando Pasco Hospice, Inc. v. Meritain Health, Inc., No. 8:13-cv-353-T-33AEP, 2013 WL 3350886, at *3 (M.D. Fla. July 2, 2013) (quoting Hayduk v. United Parcel Serv., Inc., 930 F. Supp. 584, 589 (S.D. Fla. 1996)). However, "binding cases in this circuit have held that a third-party defendant is not barred from pursuing a claim under certain prescribed circumstances." Id. (citing Carl Heck Eng'rs v. Lafourche Parish Police, 622 F.2d 133 (5th Cir. 1980)). In Carl Heck, the Fifth Circuit provided that "if the third party complaint states a separate and independent claim which, if sued upon alone, could have been brought properly in federal court, there should be no bar to removal." 622 F. 2d at 136. Therefore, the Court must determine whether the third-party causes of action are separate and independent claims which if sued upon alone could have been brought properly in federal court.

In their Notice of Removal, Third-Party Defendants CBS, CEG, and Edward Turen seek removal pursuant to 28

U.S.C. §§ 1452 and 1334(b). (Doc. # 1). They allege the claims DDR set forth in the Third-Party Complaint are "related to" the Oxford Chapter 11 case, and therefore could have been properly brought in federal court. (<u>Id.</u> at 2-3).

Under 28 U.S.C. § 1452, a party may remove a claim to the district court for the district where the claim is pending if the district court has jurisdiction under 28 U.S.C. § 1334. <u>See</u> 28 U.S.C. § 1452. Section 1334 establishes original jurisdiction for claims that are related to cases under Title 11:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, **or arising in or related to** cases under title 11.

28 U.S.C. § 1334(b)(emphasis added); <u>see</u> <u>Matter of Lemco Gypsum, Inc.</u>, 910 F.2d 784, 788 (11th Cir. 1990)("For subject matter jurisdiction to exist there must be some nexus between the related civil proceeding and the Title 11 case").

In <u>Matter of Lemco Gypsum, Inc.</u>, the Eleventh Circuit "join[ed] the majority of the circuits that have adopted the <u>Pacor</u> formulation" for determining whether an action is related to a bankruptcy case. 910 F.2d 784, 788 (11th Cir. 1990). In <u>Pacor, Inc. v. Higgins</u>, the Third Circuit articulated a test for determining whether a civil proceeding is sufficiently related to a bankruptcy action so as to confer federal jurisdiction on the district court. 743 F.2d 984, 994 (3d Cir. 1984). The test is "whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." <u>Id.</u> (internal citations omitted).

CBS, CEG, and Edward Turen allege that the third-party action could conceivably affect the Oxford case in several ways. (Doc. ## 25 at 6; 30 at 6; 31 at 6). First, to the extent that DDR recovers against the Third-Party Defendants, the $11.1 million claim of DDR against Oxford

will be reduced proportionately. (Doc. ## 25 at 6, 30 at 7, 31 at 7). In support of this contention, CBS, CEG, and Edward Turen cite to In re Rolsafe International, LLC, 477 B.R. 884 (Bankr. M.D. Fla. 2012), for the proposition that "it is well established that a creditor must apply any recovery from a non-debtor third party to reduce its claim against the debtor and estate." Second, any recovery by DDR against the Third-Party Defendants will "ripen" the Third-Party Defendants' contingent claims against Oxford for subrogation, indemnity or contribution. (Doc. ## 25 at 7, 30 at 7, 31 at 7).

Upon careful consideration, the Court does not find that the third-party claims are related to the Oxford bankruptcy case. In the Court's view, DDR's third-party claims do not attempt to hold the Third-Party Defendants liable for Oxford's actions. Rather, this Court finds that the third-party claims are independent of, and unrelated to, Oxford's alleged misconduct.

Furthermore, the Third-Party Defendants did not provide the Court with any support regarding their potential subrogation, indemnification, or contribution claims against Oxford if they are found liable to DDR. Instead, the Third-Party Defendants have proffered

conclusory assertions, speculative at best, regarding such potential claims. Although subrogation, indemnification, or contribution claims may arise once a determination has been rendered in state court, at this juncture, the Court is not inclined to speculate as to the merits of the Third-Party Defendants' potential claims against Oxford.

### III. **Conclusion**

The Court finds that the third-party claims are not related to the Oxford bankruptcy case. Upon further review, this Court finds that the third-party claims, if sued upon alone, could not have been properly brought in federal court. Therefore, the Court remands this action, in its entirety, to state court for lack of subject matter jurisdiction.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiff Driveway Maintenance, Inc.'s Motion to Remand (Doc. # 10) is **GRANTED.**

(2) Defendant DDR Southeast Clearwater Development LLC's Motion to Remand (Doc. # 33) is **GRANTED.**

(3) All further pending motions are **DENIED as moot.**

(4) The Clerk is directed to remand this matter to the Circuit Court of the Sixth Judicial Circuit, in and

for Pinellas County, Florida.   After remand has been effected, the Clerk shall close the case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 25th day of September, 2013.


VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies:   All Counsel of Record

21